Chief Justice Bibb
delivered the Opinion of the Court.
In March, 1822, James Caldwell exhibited his bill against Shepherd’s heirs, Benjamin Chapeze and Charles A. Wickliffe, to collect a balance upon a compromise, between himself and Adam Shepherd, whereby he claimed a debt of $1,500, against Adam Shepherd, and a lien upon certain lands for the payment of it; Charles A. Wickliffe, being the trustee selected by himself, as the depository of his lien and security, upon the compromise.
By his bill and exhibits, and answer to interrógalo-ries, itppears that he had extorted the compromise, from Adam Shepherd by purchases, whilst in office of deputy sheriff for Nicholas Crist, sheriff of Bullitt county, at sheriff’s sale, made by himself, and his co-deputy Hundly of lands, the property of Adam Shepherd, at great sacrifices; and by another purchase at sheriff’s sale of the deputy of Sanders, sheriff of Bullitt. Having thus acquired these claims upon a valuable estate of Adam Shepherd, indud- *390 ing his domicile, and also a disputed piece of a few acres, possessed by Shepherd, but enclosed by Caldwell; he instituted a suit against Adam Shepherd; employed Benjamin Hardin before suit, as his agent, and as his attorney, to prosecute his claims, agreeing to give him one third of the land if recovered, and nothing if unsuccessful, Mr. Hardin to pay one third of the costs.
's ¡ompromisp.
Payment to Hardin of his Part compr i .
Decree of the eircuit court
Caldwell relies on the champerty4 and main-tcnance.
Laws against andmSnten-anee, are for defence and cannot be use<]as of" lenn,SlJ°n''’eatP' the possessor.
*390 At the trial and before the jury retired, the corn-promise between said Caldwell, Adam Shepherd, and Benj. Hardin was effected, by which Shepherd agreed to pay $1,50.0, Caldwell to have the land within his indosUre at $10 per acre, in part payment; to retaina lien on the land included in his purchases; Charles A. Wickliffe was constituted a trustee with power to sell the land, to. raise the money in case of default, and two notes of $750 each, were executed to. Caldwell by Adam Shepherd with Benjamin Chapeze, as his security.
Caldwell instituted this bill against Wickliffe, the trustee, Shepherd’s heirs and Chapeze, to collect a balance claimed; the defendants insist on a payment of $500, made to Benjamin Hardin, which Cald- ^ was unwilling to allow; Caldwell died, and the suit was revived by his administrator, William Caldwell.
The circuit court allowed the payment to Hardin; and with this allowance Chapeze has paid the whole of the debt; and this payment is the sole subject now of controversy.
By the answer of Caldwell to interrogatories, he admits the agreement with Mr. Hardin, to give him one third of the proceeds in case of success, ar!¿ nothing if unsuccessful; he admits the. compromise, but did not expect Mr. Hardin to. claim the third, relies on the common law and statutes, against champerty and maintenance, to avoid his agreement with his attorney and counsellor.
We are not disposed to relax the rules of the common jaW} nor the statutes against champerty and n!ilhitenace. They are wise and politic, and tend to promote the peace and security of society. But *391 those provisions are weapons of defence for the persons in possession, not of annoyance and attack, by ehampertors and maintenors, against those who are the victims of the champerty and maintenance.
An attorney and platinílffí anaction in partnership, contrary to tainst'cham-perty and maintenance, fhe triaf1"5 compromised with defeml-^í/sunf which obligations were ant’paid at" torney his Par.t> woul/not allow, but held a sufficient discharge.— r'ot aI” pr°o/if3 by his own illegal acts, off "an innocent person.
*391 If this were a dispute merely between Caldwell and his attorney, and counsellor, as to enforcing the agreement between themselves, this court would not be inclined to favor the attorney or counsellor who had violated the law.
But the question is presented in a very different attitude. Shall the innocent victim of the cham-pertors be sacrificed? Shall a champertor who has received the benefit of the maintenance, and driven his adversary to the wall, be permitted, now to allege his own unlawful agreement, and annoy his adversary still further ? Shall he profit by his own turpitude, avoid hisjfown agreement, plead his crime against the innocent victim, and triumph and riot in the offence?
Whether Mr. Chapeze paid to Mr. Hardin, the sum of $500 in his character of attorney, whilst he held the notes, or as partner of Caldwell, is not worth enquiry, Mr. Chapeze, the security and husband of one of Shepherd’s heirs, paid to Mr. Hardin $500 in consequence, and in discharge of so much of the $1,500. Mr. Hardin and Mr. Caldwell were partners in suit, partners in the adjustment, partners in the proceeds. Mr. Chapeze to place the case most unfavorably against him, knew the partnership, and the champerty. He has paid according to the division and interest of the chain-perty partnership. Shall he be the double victim; first of the effects of the suit itself; secondly of the illegality oí the partnership ? Shall Caldwell profit by the efforts of Mr. Hardin’s services and talents, and after, plead the unlawful combination against Shepherd, the better to profit himself by the illegality of his conduct., and to inflict a deeper wound upon the persons, whom the rules of law were intended to shield and protect?
Mr. Caldwell presents himself as complainant in equity, in an attitude, but little calculated to call *392 forth the active energies of the chancellor. His own exhibits render him obnoxious to the charge of having used the powers of his office as deputy sheriff to oppress Adam Shepherd; his answer to interrogatories, and the exhibits and proofs, show that he made a champerty agreement to effectuate that oppression; in making the compromise of the suit, he used the agreement with Mr. Hardin to inflate the sum to be given by Shepherd for his peace, by urging that Mr. Hardin was a partner and entitled to a„third, when the heirs of Shepherd, and Cha-peze the security, have carried into effect that compromise, by paying two thirds to Caldwell, and one third to Hardin, Caldwell urges the illegality of his own agreement with Hardin; when the heirs of Shepherd and Chapeze, rely on the payment to Hardin, and thereupon, Hardin petitions to be made a defendant, to settle the matter between Caldwell and himself, Caldwell excepts to. the admission of Hardin as defendant, having received all the benefit of Mr. Hardin’s services, he is not willing to settle that, but asks of the court to compel Chapeze and Shepherd’s heirs to pay the whole sum of 01,300 to him and seek their redress against Mr. Hardin.
Where a sheriff had used the powers of his office to obtain an unfair advantage, then made a champerty and main-tainance contract with a lawyer to accomplish it, and obtained a compromise, and then appealed to equity to enforce a lion given to secure the compromise money, against the lawyer’s receipt for bis part — his claim condemned.
Attorney who had seived under a champerty contract, which the client refuses to execute, is ■ entitled to compensation for his services.
He that would have equity done Him must do equity to the same person.
*392 As between Caldwell and Hardin, the latter was entitled to compensation for his services, as decided in Rust vs. Larue, &c. In making the compromise with Shepherd, and obtaining the agreement for 01,500, Caldwell in proper person, and in presence of Hardin, and of the attorney for Shepherd, insisted on the interest of Mr. Hardin of one third, and the compromise was based^upon it. In fixing Mr. Hardin’s compensation, this subject, so introduced by Caldwell into the compromise, so used, and so acknowledged by him, would have great weight in a suit between Caldwell and Hardin alone. But when insisted on by Shepherd’s heirs and Chapeze, it is entitled to greater weight.
The complainant, Caldwell, asks relief contrary to two plain maxims of equity; “he that will have equity done to him, must do it to the same person;” “he that hath committed iniquity, shall not have equity;” (Francis’ maxims, I. and II.) The chana- *393 gerty agreement was contrary to tbe protection intended, by the common law and statute, to be secured to Shepherd; and now Caldwell’s reliance is, that he has committed wrong, and asks to be permitted to profit by his own wrong..
. Loughborough, for plaintiffs; Crittenden, Denny and •Hardin, for defendants
Decree affirmed with costs.